EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN J. GERARDINO y ENRIQUE VALEDÓN, acusados y apelantes.

No. 2751.—*Visto:* Enero 24, 1927. *Resuelto:* Julio 20, 1927.

1. DERECHO PENAL—JUICIO—CURSO DEL, Y FORMA EN QUE SE CONDUCE EL JUICIO— OBJECIONES—NOMBRAMIENTO DE FISCALES ESPECIALES.—La cuestión que, relativa a que El Pueblo esté representado en juicio por un fiscal no del distrito en que se ve la causa sino por uno de otro distrito y un fiscal especial se levante en el acto del juicio es tardía.

3. DERECHO PENAL—APELACIÓN Y ERROR, Y *Certiorari*—REVISIÓN — CUESTIONES QUE SE CONSIDERAN RENUNCIADAS EN APELACIÓN.—El Supremo no considerará excepciones perentorias contra una denuncia presentadas tardíamente, aún cuando se alegue que los hechos denunciados no constituyen delito público, cuando el apelante ni argumenta ni discute los méritos de tal alegación.

4. CONSPIRACIÓN—RESPONSABILIDAD CRIMINAL — PROCESO Y CASTIGO—ACUSACIÓN FISCAL O DENUNCIA—CONSPIRACIÓN CON EL FIN DE DEFRAUDAR EN GENERAL.— La denuncia en el caso de autos *se resolvió* establece el delito de conspiración de que se acusa a los apelantes.

5. CONSPIRACIÓN—RESPONSABILIDAD CRIMINAL—PROCESO Y CASTIGO—APELACIÓN — REVISIÓN—EN GENERAL.—Alegado como error la denegatoria de una moción sobre devolución de una póliza que se alega fué ilegalmente ocupada por haberse probado tal ocupación ilegal, cuando nada demuestra que hubo coacción para su entrega, sino que el tenedor la entregó voluntariamente firmando también libremente la nota de descargo o cancelación al dorso, el error alegado no existe.

6. DERECHO PENAL—EVIDENCIA—PRUEBA DOCUMENTAL Y EXCLUSIÓN DE PRUEBA ORAL POR ELLA—CERTIFICACIONES OFICIALES.—Una certificación del superintendente general de seguros al efecto de que determinada compañía es una corporación extranjera debidamente registrada en el país y autorizada para hacer negocios de seguros en la Isla, presentada con el objeto de acreditar tales extremos, en ausencia de impugnación de la autenticidad de la firma del funcionario autorizante, es admisible en evidencia.

7. DERECHO PENAL—APELACIÓN Y ERROR, Y *Certiorari*—REVISIÓN—ERRORES NO PERJUDICIALES—ADMISIÓN DE PRUEBA OBJETADA—ERRORES SUBSANADOS POR ADMISIONES DEL PROPIO APELANTE.—De existir error en la admisión en evidencia de una solicitud de seguro como autorizada por el acusado sin haberse identificado su firma no es perjudicial, cuando él ha admitido ser el beneficiario de la póliza expedida que luego canceló bajo su firma.

8. DERECHO PENAL—EVIDENCIA—EVIDENCIA PRIMARIA Y SECUNDARIA Y EVIDENCIA DEMOSTRATIVA *(Demonstrative Evidence)*—MOTIVOS PARA ADMITIR PRUEBA SECUNDARIA—POSESIÓN O CONTROL DE LA EVIDENCIA PRIMARIA EN EL ACUSADO.—Declaraciones en cuanto a la forma en que se ha hecho el cobro de la prima de una póliza hechas por un testigo que recibió el cheque que representaba el montante de la prima, y a quien fué pagado, son admisibles sin necesidad de que el testigo produzca dicho documento.

9. DERECHO PENAL—APELACIÓN Y ERROR, Y *Certiorari*—REVISIÓN—CUESTIONES DISCRECIONALES—EN GENERAL.—Establecida la regla de no admitir como testigos a otra persona que la que ha prestado juramento y no limitando ella la acción de la corte, en ausencia de que ésta abusó de su discreción al permitir declarar como testigo a una persona no obstante dicha regla, su actuación no será intervenida en apelación.

10. DERECHO PENAL—APELACIÓN Y ERROR, Y *Certiorari*—REVISIÓN—CUESTIONES SOBRE LAS PRUEBAS—APRECIACIÓN DE LAS PRUEBAS—PRUEBA CONTRADICTORIA.—Cuando la corte no comete error ni procede con prejuicio, pasión o parcialidad al derimir el conflicto de la evidencia, procede confirmar la sentencia apelada.

SENTENCIA de *R. Díaz Cintrón*, J. (Ponce), declarando culpable a los acusados del delito de conspiración, con costas. *Confirmada.*

*Felipe Colón Díaz, José R. Gelpí y José Tous Soto,* abogados de los apelantes; *José E .Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

En este caso la corte inferior declaró culpables a los acusados Juan J. Gerardino y Enrique Valedón de un delito de conspiración, imponiendo al primero seis meses de cárcel más una multa de $500, y al segundo solamente multa por la suma de $200.

[1, 2] Los acusados apelaron de la sentencia y en su alegato señalan la comisión de doce errores. Varios de los errores señalados han sido resueltos en el día de hoy

en el caso No. 2750 de *El Pueblo* v. *Juan J. Gerardino y Sixto Luccioni*, y sus circunstancias son más o menos las mismas que concurren en el presente. Nos referimos a los siguientes errores, a saber: 1, oposición a la representación del gobierno por el Fiscal de Distrito de Mayagüez, Sr. Romany, y el fiscal especial Sr. Samalea; 2, moción solicitando el sobreseimiento de la causa en virtud de lo prescrito en el inciso 2° del artículo 448 del Código de Enjuiciamiento Criminal; y 3, desestimación de la moción solicitando un *bill of particulars*. Esta moción, sin embargo, no aparece de los autos.

[3, 4] Se alega como cuarto motivo de error haber la corte declarado sin lugar las excepciones perentorias presentadas contra la denuncia. En el alegato, sin embargo, solamente se hace una mera referencia a la moción que fué presentada y no se discuten los fundamentos de la misma. Aun cuando de la moción no aparece la fecha ni el momento de su presentación, parece inferirse de los autos que su presentación se hizo en el acto del juicio. Siendo esto así, la moción era tardía para considerar aquellos fundamentos que se refieren a la forma o redacción defectuosa de la denuncia. Es cierto que los apelantes alegan en la moción que los hechos denunciados no constituyen el delito de que se les acusa, pero no argumentan ni discuten los méritos de tal alegación. Basta, sin embargo, una ligera lectura de la denuncia para que se vea que ella establece el delito de conspiración de que se acusa a los apelantes. Dicha denuncia, en lo pertinente, dice:

"Los citados Juan J. Gerardino y Enrique Valedón, en Ponce, P. R., que pertenece al Distrito Judicial Municipal, de Ponce, P. R., allá por el mes de Mayo de 1923, con anterioridad a la presentación de esta denuncia, ilegal, voluntaria, maliciosa y fraudulentamente, obrando juntos y de común acuerdo, conspiraron y se pusieron de acuerdo para engañar y defraudar a la Compañía de Seguros de Vida 'The Manufacturers' Life Insurance Co.,' corporación extranjera autorizada para hacer negocios en Puerto Rico, y con tal objeto los citados Juan J. Gerardino y Enrique Valedón

aseguraron a un tal Arcadio Robles Cortés por la suma de $17,500
en la citada corporación The Manufacturers' Life Insurance Co.,
haciendo saber a dicha compañía que el mencionado Arcadio Robles
Cortés se encontraba en buen estado de salud, a sabiendas dichos
acusados de que el citado Robles a la fecha de ser asegurado, o sea
allá por el mes de Mayo de 1923, se encontraba en mal estado de
salud o enfermo, y bajo tal engaño, voluntaria y maliciosamente
realizado, indujeron a la citada Compañía a asegurar al referido
Robles por la suma de $17,500, para lo cual dicha Compañía expi-
dió una póliza a nombre de Arcadio Robles Cortés, sin que el fraude
se consumiera (*sic*) por haber sido cancelada la póliza allá por el
mes de Noviembre de 1923 . . .''

[5] En el quinto error se discute la moción que la corte
inferior declaró sin lugar sobre devolución de ciertos docu-
mentos que se alegan haberse ocupado ilegalmente por los
representantes de The Manufacturers' Life Insurance Com-
pany. También los apelantes en su alegato tratan ligera-
mente este error. Ellos se remiten a la declaración de
Mayoral alegando que fué probada su ocupación ilegal. El
documento de que trata la moción es la póliza No. 287451,
que fué expedida a nombre del asegurado Arcadio Robles
por $17,500, siendo beneficiario Enrique Valedón, en cuyo
poder se hallaba. Un examen, sin embargo, de la declara-
ción de Mayoral demuestra evidentemente que no hubo nin-
gún género de coacción para que Valedón le entregara la
póliza. Mayoral fué a Peñuelas, lugar de residencia del
acusado, y éste voluntariamente le entregó la póliza, quien
poco después firmó libremente la nota de descargo o cance-
lación al dorso de la póliza, admitiendo como razón para
ello que Arcadio Robles estaba enfermo a la fecha de soli-
citar el seguro.

[6] Se imputa como error (sexto error) haberse admi-
tido en evidencia una certificación del Superintendente de
Seguros de Puerto Rico, que no contenía la transcripción de
ningún documento y sí una opinión de dicho funcionario.
La certificación presentada como prueba dice:

''Government of Porto Rico.—Department of Finance.—Bureau

of Insurance.—Yo, Juan G. Gallardo, Superintendente de seguros Interino, por la presente certifico que la compañía de seguros de vida denominada 'Manufacturers' Life Insurance Company,' de Toronto, Canadá, es una compañía extranjera que se halla debidamente registrada en el país y que obtuvo del Superintendente de Seguros un certificado de autorización para hacer negocios en la isla durante el año económico de 1922 a 1923, y por consiguiente se hallaba debidamente autorizada para hacer seguros de vida en Puerto Rico durante todo el mes de mayo de 1923.

"Y para que conste, y a petición del Fiscal Especial, Sr. Luis Samalea, expido la presente, libre de derechos, por destinarse a usos oficiales, en San Juan de Puerto Rico a 23 de enero de 1924.

"(f)     Juan G. Gallardo,
Superintendente Interino."

El fiscal dijo que el objeto de la certificación era acreditar que la Manufacturers' Life Insurance Company es una corporación de Toronto, Canadá, debidamente registrada en el país y autorizada para hacer negocios de seguros en Puerto Rico, y siendo éste el objeto de la presentación del documento, y no impugnándose la autenticidad de la firma del funcionario autorizante, no encontramos que la corte erró al admitirlo en evidencia.

[7] También alegan los apelantes al argumentar el séptimo error, que se admitió en evidencia como autorizada por el acusado, Enrique Valedón, una solicitud de seguro sin haber sido identificada la firma de dicho acusado. Si hubo error no fué perjudicial porque el acusado Valedón admitió en su declaración ser el beneficiario de la póliza expedida por $17,500, la que luego canceló bajo su firma.

[8] Declarando el testigo Mayoral, siendo éste el motivo del octavo error, dijo que Juan J. Gerardino era el que había pagado las primas de las dos pólizas que fueron expedidas al asegurado Arcadio Robles, una por $17,500, beneficiario Enrique Valedón, y la otra por $1,000, beneficiario Pedro J. Robles, hijo del asegurado.

Lo pertinente del incidente dice así:

"P.—¿Cuánto era el premio de la póliza de mil dólares? R.—

No recuerdo, tendría que ver la póliza. (El testigo obtiene el documento) Treinta y uno cinco ($31.05). P.—¿Anual? R.—Anual. P.—¿Y la de diez y siete mil quinientos pesos? R.—Quinientos cuarenta y tres cuarenta ($543.40). P.—Que hacen un total de quinientos cuarenta y tres con treinta y uno, quinientos setenta y cuatro y pico. ¿Eso era el importe de los premios de las dos pólizas por un año? R.—Sí, señor. P.—¿Se pagaron esos precios? R.— Sí, señor. P.—¿Quién los pagó? R.—Arcadio Robles. P.—¿Con qué la pagó? R.—Con un cheque. P.—De quién era el cheque? R.—De Juan José Gerardino. P.—¿Quién es Juan José Gerardino? R.—Uno de los acusados aquí. P.—¿Cuál de los dos? R.—El del lado allá (lo señala). (Defensa) Nos oponemos a la evidencia del pago del cheque. Que se vea el cheque. . . P.—¿Qué usted hizo con el cheque ése? R.—Lo deposité en el banco. (Defensa) Nos oponemos porque se eliminó la cuestión del cheque. Argumentación. Juez: Se sostiene la pregunta. Fiscal: P.—¿Qué se hizo con el cheque? R.—Lo deposité en el banco, en mi cuenta corriente. P. —¿En qué cuenta corriente? R.—En la mía. P.—¿Ese cheque volvió a su poder? R.—No. P.—¿No volvió a su poder ese cheque? R.—No, señor. P.—¿Se abonó en su cuenta corriente ese cheque? R.—Sí, por eso lo mandé al banco. P.—¿Se le abonó en cuenta corriente ese cheque a usted? R.—Sí, señor.''

En primer lugar, Mayoral declaraba sobre un hecho del que tenía conocimiento directo. El manifiesta que recibió un cheque librado por Gerardino a favor de Arcadio Robles, que representaba el montante de las primas de las dos pólizas. El cheque fué pagado, acreditándose su importe en la cuenta corriente del testigo y naturalmente que el mismo volvía a manos del librador. Era como un recibo o comprobante que no estaba al alcance del testigo. Era más bien para Gerardino o para cualquier librador de un cheque el interés de producir dicho documento para probar el pago o la entrega del dinero en caso de negarse una u otra cosa. No encontramos, por tanto, que la actuación de la corte fuera errónea al permitir las manifestaciones del testigo en cuanto a la forma en que hizo el cobro de la prima.

En los errores noveno y décimo apuntados se sostiene por los apelantes que la corte erró permitiendo al fiscal que

impugnara el testimonio del testigo de cargo Angel M. Mayoral ''sin haber demostrado sorpresa en otra causa legal'' y porque se le permitió refrescar su memoria leyéndole una declaración prestada por él ante el fiscal.

Mientras declaraba el testigo Mayoral, surgió el incidente que sigue:

''P.—Cuando usted fué donde Enrique Valedón y tuvo la entrevista con él, ¿a qué se avino él? R.—A entregar la póliza. P.—¿Y a qué más? ¿Firmó algo? R.—En ese momento no. P.—¿Está completamente seguro? R.—Sí, señor. P.—¿Usted declaró bajo juramento ante el fiscal especial? R.—Sí, señor. P.—¿Señor Samalea? R.—Sí, señor. P.—¿La declaración que usted prestó es exactamente igual a la que está prestando aquí? (Defensa) Nos oponemos. Resulta ahora que el Pueblo de Puerto Rico pretende impugnar su propio testigo. Nos oponemos en la forma a que se va a hacer. Juez: La Corte entiende que el fiscal está dentro de ley. Fiscal: P.—¿Usted no declaró antes, cómo usted logró hacer eso? Y contestó usted. 'Hablando . . . (Oposición por parte de la defensa. Alega que si las manifestaciones del testigo constan por escrito, que se le presente el escrito. El Fiscal discute la oposición con los abogados defensores.)ⁱ Juez: Sin lugar la oposición. Puede seguir interrogando. (Al fiscal) Fiscal: P.—¿A usted no se le preguntó 'Cómo usted logró hacer eso?' Y contestó: Hablando con los beneficiarios. (Defensa) Nos oponemos a que sea así. Juez: ¿La defensa se opone a la forma de la pregunta? Defensa: A la forma de la pregunta. Argumentación. Juez: ¿Qué procedimiento va a usar? Defensa: La pregunta típica. Juez: Puede seguir el interrogatorio. Fiscal: P.—¿Usted contestó o es cierto o no que dijo esto: 'Como se hizo esa cancelación.' Defensa: Oposición porque no se ha hablado nada de cancelación anteriormente. Fiscal: El testigo ha dicho que no se avino absolutamente a nada. Defensa: Que siga el fiscal con su pregunta. Fiscal: P.—¿Es cierto o no es cierto que la vez en que usted declaró ante el fiscal especial, señor Samalea, se le hizo la siguiente pregunta: '¿Cómo se hizo esa cancelación?' Y usted contestó: 'Los representantes de la compañía señores Font y Young, habiéndome hecho presente que en su concepto el seguro demostraba engaño hacia la compañía por parte del asegurado . . . yo me les ofrecí a conseguir las pólizas y hacer que fueran devueltas para su cancelación, lo que logré hacer suplicándole a los beneficiarios a que se las entregaran y firmaran

un recibo de descargo, reconociendo la nulidad de tales pólizas.'
¿Es cierto eso? R.—Posteriormente se hizo eso.''

Aunque no aparece que los apelantes tomaran excepción a las resoluciones de la corte, sin embargo, como esta prueba fué la que se tomó ante la corte municipal, las partes estipulan introducir el récord taquigráfico de las declaraciones y dar por excepcionadas las resoluciones de la corte en todos los incidentes que habían sido objeto de oposición.

Con anterioridad al incidente surgido, el testigo en las repreguntas de la defensa había declarado que la póliza se devolvió para ser cancelada por amenazas del gerente de la compañía de perseguirle criminalmente. El fiscal entonces al interrogar al testigo nuevamente lo que trató fué de refrescar su memoria al referirle que anteriormente había hecho manifestaciones contrarias. Y el testigo así lo admitió cuando refiere que no hubo tales amenazas y explicó los detalles de la forma en que obtuvo la devolución y cancelación de la póliza. El testigo no negó las manifestaciones que hizo con anterioridad al ser refrescada su memoria por el fiscal, y no fué necesario contradecirle mediante prueba de que se habían hecho.

[9] El undécimo error se refiere a que la corte permitió declarar como testigo al abogado Alberto S. Poventud, luego de establecida la regla de que no se admitirían otros testigos que los que habían prestado juramento. Ciertamente que se estableció dicha regla, pero ella no limitaba la acción de la corte, ya que se trataba de una cuestión discrecional para resolver la corte de acuerdo con las circunstancias del caso y nada demuestra la argumentación de los apelantes que la corte hiciera mal uso de su discreción al modificar su regla.

[10] El duodécimo y último error trata de la apreciación de la prueba.

De la evidencia de cargo aparece que el asegurado Arcadio Robles dirigió una solicitud a la compañía aseguradora sobre dos pólizas ordinarias de vida, una por $17,500,

designándose a Enrique Valedón como beneficiario, y otra por $1,000, a favor de Pedro J. Robles, hijo del asegurado. En la solicitud se hacía constar que el asegurado gozaba de perfecta salud y así se confirmaba por dichos beneficiarios que también suscribieron el documento. Las pólizas fueron expedidas y la prima de cada seguro fué satisfecha por Juan J. Gerardino, uno de los acusados. Se probó evidentemente que Arcadio Robles padecía a la fecha de la solicitud de tuberculosis pulmonar y que falleció de dicha enfermedad. El médico que lo asistió declaró en tal sentido, y un examen que se hizo del esputo dió resultado positivo, encontrándose en él el bacilo de Koch. No obstante el fallecimiento del asegurado, los beneficiarios se avinieron a su cancelación suscribiendo al dorso una nota de descargo por la cual reciben la prima que había sido pagada y admitiendo como razón para la cancelación que el asegurado estaba enfermo al tiempo de solicitar el seguro. Se demostró asimismo que Robles se dedicaba a hacer instalaciones eléctricas y no ganaba más de cuatro o cinco dólares diarios. El pasó sus últimos momentos en una casa pobre de la que el Dr. Montalvo hace una descripción triste y terrible. Se introdujo prueba de otras pólizas expedidas a otras personas también enfermas de tuberculosis pulmonar, en las que se demostró la intervención de Gerardino pagando las primas y las mismas fueron canceladas por igual razón.

Con la prueba de defensa se trató de establecer que Arcadio Robles tenía buena apariencia y no padecía de enfermedad alguna. También se trató de probar que el interés de Valedón como beneficiario se derivó de un préstamo que hizo al asegurado por $2,200. La corte, sin embargo, no creyó esta prueba y no cometió error ni procedió con prejuicio, pasión o parcialidad al dirimir el conflicto de evidencia en contra de los acusados.

*Por todo lo expuesto, debe confirmarse la sentencia apelada.*